**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**


| | | |
|---|---|---|
| **BRUCE ALLEN HASKINS,** | ) | |
| **Plaintiff** | ) | |
| | ) | **C.A.No. 14-157ERIE** |
| **vs.** | ) | |
| | ) | **District Judge Bissoon** |
| **COMMONWEALTH OF PENNSYLVANIA,** | ) | |
| **et al,** | ) | **Magistrate Judge Baxter** |
| **Defendants.** | ) | |


**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**


I.      **RECOMMENDATION**

It is respectfully recommended that the partial motion to dismiss filed by Defendants

Hassan and Corizon Health [ECF No. 33] be denied.

By separate Order filed this date, the previously-filed motions to dismiss in response to

the Original Complaint [see ECF No. 17; ECF No. 20] will be dismissed as moot in light of the

filing of the Amended Complaint.


II.     **REPORT**

A.  **Relevant Procedural History**

Plaintiff, acting *pro se*, filed this civil rights action on June 2, 2014. Plaintiff alleged that

during his incarceration at SCI Albion, he received substandard medical treatment for an

emergent and sudden eye injury.[1] Plaintiff's initial claims were based upon deliberate

---

[1] Plaintiff originally named several Defendants: Commonwealth of Pennsylvania; Department of
Corrections; Wetzel, Harlow, Bryant, Giroux, Kusiak, Overton, Maxa, Hassan and Corizon
Health, Inc.

indifference under the Eighth Amendment, as well as negligence under state law. Plaintiff obtained counsel who entered an appearance on his behalf on October 27, 2014, and who filed an Amended Complaint on November 13, 2014. See ECF No. 30. The Amended Complaint names only Corizon Health and Dr. Hassan as Defendants and contains two claims: Count I – deliberate indifference against Dr. Hassan, and Count II – professional negligence against Dr. Hassan and Corizon Health.

Defendants have filed a partial motion to dismiss[2] arguing that the state law claims, as well as Defendant Corizon, should be dismissed from this action. ECF No. 33. In their motion to dismiss, Defendants seek:

1) dismissal of Plaintiff's professional negligence claim for failure to file a certificate of merit;

2) dismissal of Plaintiff's professional negligence claim due to insufficient specificity;

3) dismissal of Plaintiff's deliberate indifference claim insofar as it makes allegations that Plaintiff was denied care on the basis of cost; and

4) dismissal of Plaintiff's deliberate indifference claim as to Defendant Corizon[3].

ECF No. 34. Plaintiff has filed an opposition brief. ECF No. 37. A reply brief, as well as a sur-reply brief, have also been filed. ECF No. 38; ECF No. 39.


**B. Defendants' Motion to Dismiss based on Federal Rule 41(b)**

Defendants move for dismissal of the professional negligence claim (at Count II) under

---

[2] Defendants acknowledge that the allegations of the Amended Complaint are likely sufficient for Plaintiff to maintain a deliberate indifference claim against Dr. Hassan and to preclude the defense of statute of limitations at this time. See ECF No. 34, page 1.

[3] In opposition, Plaintiff clarifies that he is not pursuing a deliberate indifference claim against Corizon. See ECF No. 37, page 3.

Federal Rule of Civil Procedure 41(b) based upon Plaintiff's failure to comply with Pennsylvania Rule of Civil Procedure 1042.3(a). While Rule 1042 is a matter of state substantive law that must be applied by federal courts, the procedural aspects of the state rule need not be applied.[4] See Erie R. Co. v. Tompkins, 304 U.S. 64, 79 (1938).

### 1) Standard of Review

Pursuant to Rule 41 of the Federal Rules of Civil Procedure, "a defendant may move for dismissal of an action or of any claim against the defendant" in instances where "the plaintiff [has failed] to prosecute or to comply with these rules or any order of court." Fed.R.Civ.P. 41(b). The authority to dismiss under Rule 41(b) is based on the inherent power of the court to manage its "own affairs so as to achieve the orderly and expeditious disposition of cases." Link v. Wabash Railroad Co., 370 U.S. 626, 630-631 (1962). Dismissal of an action is a matter entrusted to the sound discretion of the trial court. Curtis Bedwell & Sons, Inc. v. Fidelity Ins. Co., , 843 F.2d 683, 691 (3d Cir. 1988).

### 2) Pennsylvania Rule of Civil Procedure 1042

---

[4] Indeed, as one district court explained:

> "Not all aspects of the Pennsylvania Certificate of Merit rule can be implemented in federal court[.] … Rule 1042.3 is enforced through Pennsylvania Rule of Civil Procedure 1042.7, which directs that 'the prothonotary, on praecipe of the defendant, shall enter a judgment of *non pros* against the plaintiff for failure to file a Certificate of Merit…' These enforcement mechanisms are procedural and inapplicable to federal practice. Neither the Federal Rules of Civil Procedure nor the local rules of this Court contemplate praecipes or the entry of judgment of *non pros*. Moreover, there is no prothonotary in the [federal courts]."

Keel-Johnson v. Amsbaugh, 2009 WL 648970, at *3 (M.D. Pa. Mar.10, 2009) (internal citation omitted).

Pennsylvania law requires that a Certificate of Merit accompany a claim for professional liability brought against certain designated licensed professionals. Pa. R. Civ. P. 1042.3. The Certificate of Merit must contain a written statement from "an appropriate licensed professional" declaring whether the professional liability claim is brought directly (the defendant's conduct fell below the standard of care, bringing about the harm), indirectly (the conduct of persons under the direction of the defendant fell below the standard of care, bringing about the harm), or that no expert testimony will be necessary to prosecute the claim against that defendant. Id.

Under Rule 1042.3(a), a plaintiff is required to file the Certificate of Merit within sixty days of the filing of claim where it is alleged that "a licensed professional deviated from the acceptable professional standard." Schmigel v. Uchal, 2014 WL 3397669, at *2-3 (W.D. Pa. Jul. 11, 2014). This requirement is considered "substantive law … and must be applied as such by federal courts." Liggon-Redding v. Estate of Sugarman, 659 F.3d 258, 260 (3d Cir. 2011). See also Chamberlain v. Giampapa, 210 F.3d 154, 158-61 (3d Cir. 2000) (concluding that New Jersey "affidavit of merit" was a matter of substantive state law that must be applied by federal courts sitting in diversity actions).

### 3) Analysis

Here, Plaintiff filed the Original Complaint *pro se* on June 2, 2014. The Original Complaint was not accompanied by a Certificate of Merit, nor was one filed within sixty days. Counsel entered their appearance on behalf of Plaintiff on October 27, 2014, and filed an Amended Complaint shortly thereafter, on November 13, 2014. Five days later, Defendants filed a partial motion to dismiss and, that same day, Plaintiff filed the required Certificates of Merit. See ECF No. 33; ECF No. 35; ECF No. 36.

The Third Circuit has recognized that the sixty-day deadline for filing a Certificate of Merit "is not a strict, all or nothing deadline, and, like Pennsylvania state courts, a federal court may consider a party's reasons for an untimely submission." Rogan v. County of Lawrence, 2013 WL 4511316, at *6 (W.D. Pa. Aug.23, 2013) citing Smith v. United States, 498 Fed.App'x 120 (3d Cir. Aug. 10, 2012). See also Cuevas v. U.S., 422 Fed.App'x 142, 145 (3d Cir. Apr. 6, 2011) (holding that a plaintiff's failure to file a Certificate of Merit within sixty days of a malpractice complaint is not, by itself, fatal to his lawsuit.). The Rogan Court suggests that "if plaintiffs are able to put forth a reasonable explanation or legitimate excuse for the delay, then principles of equity suggest that this Court should deny the medical defendant's motion on this ground and allow plaintiffs to pursue their professional liability claims." Rogan, 2013 WL 4511316, at *6.

Here, Plaintiff explains that at the time of the filing of the Original Complaint he was acting *pro se*[5] and his monetary resources were so limited that he had to borrow funds just to mail the complaint. Plaintiff was unable to afford an expert, even if he had been able as a prisoner to find one who would be willing to review his medical records and provide the Certificate of Merit. Furthermore, Plaintiff was concerned that the statute of limitations would run on his claim. And, of course, Plaintiff is hampered in his abilities to read, write, and type due to his partial blindness. The Certificate of Merit was filed within days of counsel's appearance in this case and within less than six months of the initiation of this action by the *pro se* litigant.

---

[5] The federal courts are required to give much leeway to *pro se* litigants. See Haines v. Kerner, 404 U.S. 519, 520-521 (1972); Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Bierley, 141 F.2d 552, 555 (3d Cir. 1969). Under our liberal pleading rules, during the initial stages of litigation, a district court should construe all allegations in a complaint in favor of the complainant. Gibbs v. Roman, 116 F.3d 83 (3d Cir. 1997). See, e.g., Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996) (discussing Fed.R.Civ.P. 12(b)(6) standard); Markowitz v. Northeast Land Co., 906 F.2d 100, 103 (3d Cir. 1990)(same).

Plaintiff's failure to file the Certificate of Merit within sixty days of the Original Complaint should be excused by this Court and the motion to dismiss should be denied in this regard.

Some federal courts applying Rule 1042 have analyzed a motion to dismiss based on failure to file a Certificate of Merit using the familiar failure to prosecute factors. See Keel-Johnson v. Amsbaugh, 2009 WL 648970, at *3 (M.D. Pa. Mar.10, 2009).[6] These so-called Poulis factors are:

> 1) the extent of the party's personal responsibility;
>
> 2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery;
>
> 3) a history of dilatoriness;
>
> 4) whether the conduct of the party or the attorney was willful or in bad faith;
>
> 5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and
>
> 6) the meritoriousness of the claim or defense.

Poulis v. State Farm Fire & Casualty Co., 747 F.2d 863, 868 (3d Cir. 1984).

Considering these Poulis factors, dismissal of this claim is not an appropriate sanction. Although Plaintiff was personally responsible for the Rule 1042 violation, he was an incarcerated *pro se* litigant with partial blindness which negates at least some, if not all, of his personal responsibility. There is no prejudice to Defendants as the Certificate of Merit was filed within six months of the *pro se* litigant's filing of the claim, and within a month of counsel's entry of appearance on Plaintiff's behalf. The delay in the Certificate of Merit has not resulted in a failure

---

[6] "As noted, there is no mechanism for automatic dismissal by praecipe in federal court. A defendant must file a motion to dismiss the case without prejudice for failing to satisfy the Certificate of Merit requirements. […] The foregoing [discussion] makes clear that application of the Certificate of Merit rule in federal court is complicated by the procedural differences between the state and federal court systems." Id.

to meet scheduling orders or in a discovery delays. There is no history of dilatoriness or any reason to suggest bad faith. Counsel for Plaintiff filed the Certificate of Merit the same day the Defendants filed the motion to dismiss which demonstrates that Plaintiff's claims are facially meritorious (at least for the purposes of this <u>Poulis</u> analysis). Furthermore, Defendants concede that Plaintiff has likely adequately pled a deliberate indifference claim against Dr. Hassan. If Plaintiff has stated facts sufficient to support his deliberate indifference claims, he has likely alleged facts sufficient to state a negligence claim since the standard for negligence is far less stringent than the standard for deliberate indifference. <u>See</u> <u>Farmer v. Brennan</u>, 511 U.S. 825, 835 (1994) ("deliberate indifference describes a state of mind more blameworthy than negligence, and requires more than ordinary lack of due care for prisoner's interests or safety.").  So then, even under this alternative <u>Poulis</u> analysis, the motion to dismiss should be denied.


### C.  Defendants' Motion to Dismiss pursuant to Federal Rule 12(b)(6)

The remainder of Defendants' motion to dismiss is made pursuant to Federal Rule of Civil Procedure 12(b)(6).

#### 1)  Standard of Review

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) must be viewed in the light most favorable to the plaintiff and all the well-pleaded allegations of the complaint must be accepted as true.  <u>Erickson v. Pardus</u>, 551 U.S. 89, 93-94 (2007). A complaint must be dismissed pursuant to Rule 12 (b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face."  <u>Twombly</u>, 550 U.S. at 570 (rejecting the traditional 12 (b)(6) standard set forth in <u>Conley v. Gibson</u>, 355 U.S. 41 (1957)). <u>See also</u> <u>Ashcroft v. Iqbal</u>,

556 U.S. 662 (2009) (specifically applying Twombly analysis beyond the context of the Sherman Act).

A Court need not accept inferences drawn by a plaintiff if they are unsupported by the facts as set forth in the complaint. See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Nor must the Court accept legal conclusions set forth as factual allegations. Twombly, 550 U.S. at 555, citing Papasan v. Allain, 478 U.S. 265, 286 (1986). See also McTernan v. City of York, Pennsylvania, 577 F.3d 521, 531 (3d Cir. 2009) ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."). A plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 556, citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004). Although the United States Supreme Court does "not require heightened fact pleading of specifics, [the Court does require] enough facts to state a claim to relief that is plausible on its face." Id. at 570.

In other words, at the motion to dismiss stage, a plaintiff is "required to make a 'showing' rather than a blanket assertion of an entitlement to relief." Smith v. Sullivan, 2008 WL 482469, at *1 (D. Del.) quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008). "This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." Phillips, 515 F.3d at 234, quoting Twombly, 550 U.S. at 556 n.3.

The Third Circuit has expounded on the Twombly/Iqbal line of cases:

> To determine the sufficiency of a complaint under Twombly and Iqbal, we must take the following three steps:

> First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'

Burtch v. Milberg Factors, Inc., 662 F.3d 212, 221 (3d Cir. 2011) quoting Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010).


### 2) The Factual Allegations of Plaintiff's Amended Complaint

At this juncture, in the face of a motion to dismiss for lack of specificity, the Court must review the factual allegations of the Amended Complaint in the light most favorable to the Plaintiff.

On the evening of April 21, 2012, while incarcerated at SCI Albion, Plaintiff suffered a sudden and total loss of vision in his left eye, accompanied by stabbing pain and flashes of light. ECF No. 30, ¶ 7. Approximately half an hour later, Plaintiff was examined in the medical department by Corizon employee Fife, a registered nurse. Id. at ¶ 8. Nurse Fife was unable to determine why Plaintiff could not see and she left a note for the morning shift to have the physician, Dr. Hassan, examine Plaintiff's eye. Id. at ¶ 9.

The following morning, Plaintiff was taken to the medical department to be examined by Dr. Hassan. Id. at ¶ 12. Dr. Hassan conducted a cursory exam of Plaintiff's eye, after which he explained that he had no experience in eye treatment and was unable to determine the cause of Plaintiff's sudden loss of vision. Id. at ¶ 14. The medical notes written by Dr. Hassan indicate that the possible causes of Plaintiff's sudden vision loss included retinal hemorrhage, retinal tear-detachment, or retinal vein/arterial occlusion. Id. at ¶ 15. Dr. Hassan advised Plaintiff that he was required to wait for the next available eye clinic. Id. at ¶ 18. Plaintiff repeatedly requested that he

seen by an eye specialist as soon as possible and stated that he believed the injury was too serious to wait for the regularly scheduled eye clinic at the end of the month. Id. at ¶ 19. Dr. Hassan refused to send Plaintiff out for emergency treatment and claimed that only an ophthalmologist at the monthly eye clinic could make the determination that Plaintiff's condition was sufficiently serious to warrant a referral to an outside provider. Id. at ¶ 20.

Plaintiff alleges that Dr. Hassan falsely wrote in the medical records for April 22nd that Plaintiff refused to be taken to an outside hospital, instead preferring to wait to be seen by an ophthalmologist at the next clinic. Id. at page 4.

Plaintiff was not examined at the eye clinic at the end of April. Id. at ¶ 21. Plaintiff received no further medical treatment for his eye until May 12, 2012, when he encountered Nurse Jessica Owen who asked Plaintiff whether he had seen an eye doctor. Id. at ¶ ¶ 22-23. Plaintiff responded that he had not seen an eye doctor and was growing increasingly worried about permanent blindness. Id. Nurse Owen directed that Plaintiff be taken to the medical department, where she examined him, had him clean his eye, and directed that Plaintiff be examined by a doctor in the morning. Id. at ¶ ¶ 23-24.

On May 14, 2012, Plaintiff was examined by Dr. Hassan. Plaintiff explained that his symptoms had not abated and that he was not seen in the eye clinic at the end of April as Hassan had promised. Id. at ¶ ¶ 26-27. Dr. Hassan responded that he did not know why Plaintiff was not seen at the eye clinic and said "I don't run the clinic." Id. at ¶ 27. Dr. Hassan told Plaintiff that he would consult with the prison's medical director, Dr. Robert Maxa, concerning an examination by the eye clinic. Id. at ¶ 28.

On May 15, 2012, Plaintiff was called to the medical department to be seen by Dr. Maxa. Id. at ¶ ¶ 30-31. Maxa expressed concern that a blood clot may have moved to Plaintiff's optic

nerve and advised Plaintiff that he had not received any treatment for his eye because of Dr. Hassan's statement in the medical records that Plaintiff had refused to be sent outside the prison for treatment. Id. at ¶ 33. Maxa further advised Plaintiff that he had not been examined at the April eye clinic because "the contract ophthalmologist was scheduled off." Id. at ¶ 34.  Maxa noted in the chart that Plaintiff needed to be seen at Erie Retinal Surgery "ASAP." Id. at ¶ 35.

On Friday, May 18, 2012, Plaintiff was seen by Dr. Anthony Sala at the Erie Eye Clinic, the same practice that provides regular eye clinics at the prison. Id. at ¶¶ 37-38. Dr. Sala examined Plaintiff and diagnosed him with a severely detached retina in his left eye, which he described as the worst case he had ever seen. Id. at ¶ 39.  Dr. Sala found that Plaintiff had suffered a "macula off" retinal detachment and recommended that Plaintiff be evaluated by Erie Retinal Surgery. Id. at ¶¶ 39 – 40.  Dr. Sala noted that Plaintiff needed to be seen "early next week" because of the urgency of the situation.[7] Id.

Dr. Baldwin of Erie Retinal Surgery diagnosed Plaintiff with a total retinal detachment with proliferative vitreoretinopathy – a complication of retinal detachment which requires urgent treatment to prevent vision loss. Dr. Baldwin recommended referral to the University of Pittsburgh Medical Center for repair of the retinal detachment, as he believed Plaintiff's condition was so severe that it was "beyond what we can typically take care of locally" and required "university-level" care. Id. at ¶¶ 43-44.

Plaintiff was taken to UPMC on May 23, 2012, where Dr. Andrew Eller examined him and scheduled him to receive surgery to repair the retinal detachment. The surgery was

---

[7] It is critical that a patient receive prompt medical treatment. Patients whose detachments last less than one week experience the best postoperative outcomes, while patients whose detachments last several weeks have a significantly poor postoperative visual prognosis. Id. at ¶ 41.

performed on May 31, 2012, forty-one days after Plaintiff's initial eye injury. Since the surgery, Plaintiff's vision has not returned. <u>Id</u>. at ¶¶ 46-48.

### 3) Professional Negligence Claim against Corizon and Dr. Hassan

Defendants move for dismissal of Plaintiff's professional negligence claim against Corizon and Dr. Hassan based on lack of specificity.

In order to state a negligence claim under Pennsylvania law, a plaintiff must plead the following elements: 1) a duty of care; 2) a breach of that duty; 3) the breach resulted in injury; and 4) actual damage or loss. <u>Phillips v. Cricket Lighters</u>, 576 Pa. 644, 658 (Pa. 2003).

Plaintiff generally alleges that Dr. Hassan and other Corizon employees were negligent in the following ways:

- (a) Failing to obtain emergency medical care for Plaintiff when he presented with sudden blindness;

- (b) Failing to obtain any appropriate medical care for an extended and unreasonable period of time after Plaintiff presented with sudden blindness;

- (c) Failing to adequately document any refusal of treatment by Plaintiff;

- (d) [omitted in Amended Complaint];

- *(e) Failing to provide appropriate medical diagnostic care and treatment;*

- *(f) Failing to possess and/or exercise adequate medical skills, knowledge, experience and techniques for the proper treatment of Plaintiff; and*

- *(g) Failing to properly conform to accepted standards of medical practice and care in the diagnosis, treatment and medical management of Plaintiff.*

ECF No. 30, ¶ 77 (emphasis added). Plaintiff also incorporates all the earlier paragraphs by reference.

Defendants argue that at (e), it is unclear when the purported failure occurred and what medical care or treatment should have been provided, and at (f) and (g), there is no specificity as to how each defendant was liable. To the contrary, Plaintiff's allegations are sufficiently specific on these points at this early stage of the litigation. Plaintiff alleges that on the evening of the initial injury, Nurse Fife, a Corizon employee, should have recognized Plaintiff's condition as emergent and arranged to have him taken to an Emergency Room. ECF No. 30, ¶ 10. The following day, during Plaintiff's initial examination by Dr. Hassan, Hassan indicated that Plaintiff could be suffering from retinal hemorrhage, retinal tear/detachment, or retinal vein/arterial occlusion. Plaintiff avers that Hassan, by his own admission, was not competent to treat Plaintiff's condition and any of the causes of the sudden blindness should have been considered an emergency requiring immediate outside treatment. Id. at ¶ ¶ 16-17. Additionally, Plaintiff claims that Hassan falsely noted in the medical records that Plaintiff refused to be taken to an outside hospital. Id. at page 4.

Defendants' motion to dismiss should be denied in this regard.

### 4) Deliberate indifference claim against Dr. Hassan

Next, Defendants move for partial dismissal of the deliberate indifference claim insofar as the alleged denial of medical care is based on financial considerations.

In the medical context, a constitutional violation under the Eighth Amendment occurs only when prison officials are deliberately indifferent to serious medical needs. Estelle v. Gamble, 429 U.S. 97 (1976). The standard is two-pronged: "[i]t requires deliberate indifference on the part of prison officials and it requires that the prisoner's medical needs be serious." West v. Keve, 571 F.2d 158, 161 (3d Cir. 1978). A serious medical need is "one that has been

diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." Monmouth County Corr'al Inst. Inmates v. Lanzaro, 834 F.2d 326, 327 (3d Cir. 1987). "If necessary medical treatment is … delayed for non-medical reasons, a case of deliberate indifference has been made out." Id. at 346. See also Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1987) ("if the failure to provide adequate care … was deliberate and motivated by non-medical factors, then the [plaintiff] has a viable claim.").

Plaintiff has alleged that he presented to Hassan with an emergent and acute medical issue, Hassan refused to send Plaintiff for outside medical treatment, and instead noted in the chart that Plaintiff refused outside treatment. Clearly, a significant delay in treatment for a serious condition has been alleged and Plaintiff should be allowed to pursue discovery in order to flesh out the reasons for the delay. Proving the delay was motivated by cost-savings is not necessary for Plaintiff to prevail on a deliberate indifference claim since deliberate indifference can be manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, denial of prescribed medical treatment, a denial of reasonable requests for treatment that results in suffering or risk of injury, Durmer, 991 F.2d at 68, or "persistent conduct in the face of resultant pain and risk of permanent injury," White v. Napoleon, 897 F.2d 103, 109 (3d Cir.1990).  In order to prevail on a deliberate indifference claim, it will ultimately be Plaintiff's burden to prove the delay in treatment was not based on medical reasons.

The motion to dismiss should be denied.


## III.    CONCLUSION

It is respectfully recommended that the partial motion to dismiss filed by Defendants Hassan and Corizon Health [ECF No. 33] be denied.

By separate Order filed this date, the previously-filed motions to dismiss in response to the Original Complaint [see ECF No. 17; ECF No. 20] will be dismissed as moot in light of the filing of the Amended Complaint.

In accordance with 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72, **the parties must seek review by the district court by filing Objections to the Report and Recommendation by June 15, 2015.  Any party opposing the objections shall have until June 29, 2015, to respond thereto.**  See Fed.R.Civ.P. 72(b)(2).  Failure to file timely objections may constitute a waiver of appellate rights.  See Brightwell v. Lehman, 637 F.3d 187, 194 n.7 (3d Cir. 2011); Nara v. Frank, 488 F.3d 187 (3d Cir. 2007).


/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge

Dated: June 1, 2015