# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

BRUCE ALLEN HASKINS,         )
    Plaintiff                )
                             )   C.A.No. 14-157ERIE
vs.                          )
                             )   District Judge Bissoon
COMMONWEALTH OF PENNSYLVANIA,)
et al,                       )   Magistrate Judge Baxter
    Defendants.              )

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

## I.  RECOMMENDATION

It is respectfully recommended that Defendants' motion for summary judgment [ECF No. 58] be denied.

## II.  REPORT

### A.  Relevant Procedural History

Plaintiff, acting *pro se*, filed this civil rights action on June 2, 2014. Plaintiff alleged that during his incarceration at SCI Albion, he received substandard medical treatment for an emergent and sudden eye injury. Plaintiff obtained counsel who entered an appearance on his behalf on October 27, 2014, and who filed an Amended Complaint on November 13, 2014. See ECF No. 30. The Amended Complaint names only Corizon Health and Dr. Hassan as Defendants and contains two claims: Count I – deliberate indifference against Dr. Hassan, and Count II – professional negligence against Dr. Hassan and Corizon Health.

Defendants have moved for summary judgment on the following bases: 1) Dr. Hassan is entitled to summary judgment because Plaintiff Haskins failed to establish an Eighth

1

Amendment claim; and 2) without a viable federal claim, the court should decline to exercise supplemental jurisdiction over the remaining state law claim[1]. ECF No. 59.

Plaintiff has filed a Brief in Opposition [ECF No. 64] and Defendants have filed a Reply Brief [ECF No. 66]. This motion is fully briefed and is ripe for disposition by this Court.

### B. Standard of Review

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." When applying this standard, the court must examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007); UPMC Health System v. Metropolitan Life Ins. Co., 391 F.3d 497, 502 (3d Cir. 2004). The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(e); Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460-461 (3d Cir. 1989)(the non-movant must present affirmative evidence - more than a scintilla but less than a preponderance - which supports each element of his claim to defeat a properly presented motion for summary judgment). The non-moving party must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (i.e., depositions, answers to

---

[1] Given the recommendation that the motion for summary judgment be denied, this Court need not analyze Defendants' argument on supplemental jurisdiction of the state law claim.

2

interrogatories and admissions) to meet his burden of proving elements essential to his claim. Celotex, 477 U.S. at 322. See also Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).

When considering a motion for summary judgment, the court is not permitted to weigh the evidence or to make credibility determinations, but is limited to deciding whether there are any disputed issues and, if there are, whether they are both genuine and material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

### C. The Factual Allegations of Plaintiff's Amended Complaint

On the evening of April 21, 2012, while incarcerated at SCI Albion, Plaintiff suffered a sudden and total loss of vision in his left eye, accompanied by stabbing pain and flashes of light. ECF No. 30, ¶ 7. Approximately half an hour later, Plaintiff was examined in the medical department by Corizon employee Fife, a registered nurse. Id. at ¶ 8. Nurse Fife was unable to determine why Plaintiff could not see and she left a note for the morning shift to have the physician, Dr. Hassan, examine Plaintiff's eye. Id. at ¶ 9.

The following morning, Plaintiff was taken to the medical department to be examined by Dr. Hassan. Id. at ¶ 12. Dr. Hassan conducted a cursory exam of Plaintiff's eye, after which he explained that he had no experience in eye treatment and was unable to determine the cause of Plaintiff's sudden loss of vision. Id. at ¶ 14. The medical notes written by Dr. Hassan indicate that the possible causes of Plaintiff's sudden vision loss included retinal hemorrhage, retinal tear-detachment, or retinal vein/arterial occlusion. Id. at ¶ 15. Dr. Hassan advised Plaintiff that he was required to wait for the next available eye clinic. Id. at ¶ 18. Plaintiff repeatedly requested that he seen by an eye specialist as soon as possible and stated that he believed the injury was too serious to wait for the regularly scheduled eye clinic at the end of the month. Id. at ¶ 19. Dr.

3

Hassan refused to send Plaintiff out for emergency treatment and claimed that only an ophthalmologist at the monthly eye clinic could make the determination that Plaintiff's condition was sufficiently serious to warrant a referral to an outside provider. Id. at ¶ 20.

Plaintiff alleges that Dr. Hassan falsely wrote in the medical records for April 22nd that Plaintiff refused to be taken to an outside hospital, instead preferring to wait to be seen by an ophthalmologist at the next clinic. Id. at page 4.

Plaintiff was not examined at the eye clinic at the end of April. Id. at ¶ 21. Plaintiff received no further medical treatment for his eye until May 12, 2012, when he encountered Nurse Jessica Owen who asked Plaintiff whether he had seen an eye doctor. Id. at ¶¶ 22-23. Plaintiff responded that he had not seen an eye doctor and was growing increasingly worried about permanent blindness. Id. Nurse Owen directed that Plaintiff be taken to the medical department, where she examined him, had him clean his eye, and directed that Plaintiff be examined by a doctor in the morning. Id. at ¶¶ 23-24.

On May 14, 2012, Plaintiff was examined by Dr. Hassan. Plaintiff explained that his symptoms had not abated and that he was not seen in the eye clinic at the end of April as Hassan had promised. Id. at ¶¶ 26-27. Dr. Hassan responded that he did not know why Plaintiff was not seen at the eye clinic and said "I don't run the clinic." Id. at ¶ 27. Dr. Hassan told Plaintiff that he would consult with the prison's medical director, Dr. Robert Maxa, concerning an examination by the eye clinic. Id. at ¶ 28.

On May 15, 2012, Plaintiff was called to the medical department to be seen by Dr. Maxa. Id. at ¶¶ 30-31. Maxa expressed concern that a blood clot may have moved to Plaintiff's optic nerve and advised Plaintiff that he had not received any treatment for his eye because of Dr. Hassan's statement in the medical records that Plaintiff had refused to be sent outside the prison

for treatment. Id. at ¶ 33. Maxa further advised Plaintiff that he had not been examined at the April eye clinic because "the contract ophthalmologist was scheduled off." Id. at ¶ 34. Maxa noted in the chart that Plaintiff needed to be seen at Erie Retinal Surgery "ASAP." Id. at ¶ 35.

On Friday, May 18, 2012, Plaintiff was seen by Dr. Anthony Sala at the Erie Eye Clinic, the same practice that provides regular eye clinics at the prison. Id. at ¶¶ 37-38. Dr. Sala examined Plaintiff and diagnosed him with a severely detached retina in his left eye, which he described as the worst case he had ever seen. Id. at ¶ 39. Dr. Sala found that Plaintiff had suffered a "macula off" retinal detachment and recommended that Plaintiff be evaluated by Erie Retinal Surgery. Id. at ¶¶ 39 – 40. Dr. Sala noted that Plaintiff needed to be seen "early next week" because of the urgency of the situation.[2] Id.

Dr. Baldwin of Erie Retinal Surgery diagnosed Plaintiff with a total retinal detachment with proliferative vitreoretinopathy – a complication of retinal detachment which requires urgent treatment to prevent vision loss. Dr. Baldwin recommended referral to the University of Pittsburgh Medical Center for repair of the retinal detachment, as he believed Plaintiff's condition was so severe that it was "beyond what we can typically take care of locally" and required "university-level" care. Id. at ¶¶ 43-44.

Plaintiff was taken to UPMC on May 23, 2012, where Dr. Andrew Eller examined him and scheduled him to receive surgery to repair the retinal detachment. The surgery was performed on May 31, 2012, forty-one days after Plaintiff's initial eye injury. Since the surgery, Plaintiff's vision has not returned. Id. at ¶¶ 46-48.

---

[2] Plaintiff alleges it is critical that a patient receive prompt medical treatment. Patients whose detachments last less than one week experience the best postoperative outcomes, while patients whose detachments last several weeks have a significantly poor postoperative visual prognosis. Id. at ¶ 41.

5

**D. Deliberate indifference claim against Dr. Hassan**

Defendants move for summary judgment on the deliberate indifference claim. In the medical context, a constitutional violation under the Eighth Amendment occurs only when prison officials are deliberately indifferent to serious medical needs. Estelle v. Gamble, 429 U.S. 97 (1976). The standard is two-pronged: "[i]t requires deliberate indifference on the part of prison officials and it requires that the prisoner's medical needs be serious." West v. Keve, 571 F.2d 158, 161 (3d Cir. 1978). A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." Monmouth County Corr'al Inst. Inmates v. Lanzaro, 834 F.2d 326, 327 (3d Cir. 1987). Defendants do not argue this point.

Instead, Defendants focus their initial argument at the second prong of a deliberate indifference claim against Dr. Hassan. Defendants contend that Plaintiff cannot establish the requisite culpable state of mind of Dr. Hassan.[3]

Defendants are mistaken in their understanding of the law. The Court of Appeals for the Third Circuit has detailed numerous ways in which a plaintiff can demonstrate the deliberate indifference of a defendant. See Spruill v. Gillis, 372 F.3d 218 (3d Cir. 2004). Deliberate indifference has been found "where prison authorities deny reasonable requests for medical treatment … and such denial exposes the inmate to undue suffering or the threat of tangible residual injury," "where knowledge of the need for medical care [is accompanied by the] … intentional refusal to provide that care," where "necessary medical treatment is … delayed for

---

[3] Defendants argue: "Nothing in the record suggests that Dr. Hassan delayed any appointment or medical care. The record demonstrates that Dr. Hassan ordered what he thought was medically necessary. Based on Dr. Hassan's medical judgment, he did not think that it was required for Mr. Haskins to go to the emergency room on April 22nd. It was Dr. Hassan's medical judgment that Mr. Haskins could be seen within the week by the ophthalmologist." ECF No. 59, page 7.

non-medical reasons," where prison officials "condition provision of needed medical services on the inmate's ability or willingness to pay," and where prison officials "deny access to a physician capable of evaluating the need for … treatment" of a serious medical need. Lanzaro, 834 F.2d at 346-347.

The uncontroverted record before this Court demonstrates that: Dr. Hassan[4] examined Plaintiff the morning after a stabbing pain and immediate loss of vision in Plaintiff's left eye; Dr. Hassan's assessment plan included three differential diagnoses of retinal hemorrhage, retinal tear/detachment, or retinal vein/arterial occlusion[5]; Dr. Hassan's recommendation was that Plaintiff be "referred to see ophthalmologist as soon as possible." ECF No. 61-4, pages 1-2.[6]

Besides the obvious disputed issue of material fact as to whether Dr. Hassan denied Plaintiff's request for immediate ophthalmologic treatment, Dr. Hassan's own deposition testimony adds credence to Plaintiff's position that Dr. Hassan should have referred Plaintiff out for emergency treatment. Dr. Hassan testified that all three of his differential diagnoses "are

---

[4] Dr. Hassan is board certified in internal medicine and underwent general training in diagnosing diseases of the eye during his residency. ECF No. 61-2 pages 2, 5.

[5] In his deposition testimony, Dr. Hassan described: a retinal hemorrhage as "when you have the blood vessels in the eye if there're ruptured"; a retinal tear or detachment as a "tear in the retina"; and, a "retinal vein arterial occlusion" as "a blood clot … somewhere within the arteries of the retina." ECF No. 61-2, page 6.

[6] The parties acknowledge that there is a disputed issue of fact as to whether Plaintiff agreed to wait for the next eye clinic. The medical records reflect that Plaintiff stated "he does not want to be sent outside to the hospital and will prefer to wait for ophthalmologist at next clinic" [ECF No. 61-4, page 2], while Plaintiff's own deposition testimony reflects that he did not want to wait until the next clinic at the end of the month, that he wanted to see "an eye doctor, either inside or out, as soon as possible." ECF No. 61-1, page 43. Plaintiff further testified that he was "adamant" and "emphasizing this is too serious to wait. I need to be seen now or send me out or have somebody come in as soon as possible." Id. Plaintiff also testified that Dr. Hassan stated that it was "policy" that Plaintiff must wait until the next eye clinic and that Dr. Hassan did not offer any option of being referred to a hospital or to any other type of provider. Id. Defendants acknowledge that this is a disputed issue of fact, but argue that it is immaterial to the analysis.

potential medical emergenc[ies]" and that sudden vision loss is "definitely" always an emergency. ECF No. 61-2, page 8. Further, Dr. Hassan testified that when someone experiences a sudden loss of vision, they should either go to an emergency room or an ophthalmologist. Id. According to his own testimony, Dr. Hassan's failure to refer Plaintiff for emergency ophthalmologic treatment could constitute deliberate indifference under Lanzaro and its progeny. This will be for the jury to decide.

Finally, Defendants argue that "[n]otwithstanding Plaintiff's failure to establish the requisite culpable mind, Plaintiff failed to point to any evidence demonstrating what lasting injury occurred because of the purported delay as Dr. Eller, the outside specialist, indicated that even had surgery been done earlier, the outcome would have been the same." ECF No. 59, page 8. However, Plaintiff need not conclusively demonstrate that the delay in treatment caused the outcome. See Atkinson v. Taylor, 316 F.3d 257, 266 (3d Cir. 2003) ("Needless suffering resulting from a denial of simple medical care, which does not serve any penological purpose, is inconsistent with contemporary standards of decency and thus violates the Eighth Amendment.").

Accordingly, the motion for summary judgment should be denied. Given the recommendation that the motion for summary judgment be denied as to the Eighth Amendment claim, this Court need not analyze Defendants' argument on the supplemental jurisdiction of the state law claim.

## III. CONCLUSION

It is respectfully recommended that that Defendants' motion for summary judgment [ECF No. 58] be denied.

In accordance with 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72, the parties must seek review by the district court by filing Objections to the Report and Recommendation by **November 28, 2016**. Any party opposing the objections shall have until **December 12, 2016**, to respond thereto. See Fed.R.Civ.P. 72(b)(2). Failure to file timely objections may constitute a waiver of appellate rights. See Brightwell v. Lehman, 637 F.3d 187, 194 n.7 (3d Cir. 2011); Nara v. Frank, 488 F.3d 187 (3d Cir. 2007).

        /s/ Susan Paradise Baxter
        SUSAN PARADISE BAXTER
        United States Magistrate Judge

Dated: November 14, 2016